**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

JOHNATHAN MURPHY,

      Plaintiff,

v.

                                 Case No.: 3:24-CV-00236-TKW-ZCB

GOLDRING GULF
DISTRIBUTING CO. LLC,

      Defendant.

_____/

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**

      Plaintiff Johnathan Murphy ("Plaintiff" or "Murphy") and Defendant Goldring Gulf Distributing Co., LLC ("Goldring" and collectively with Plaintiff, the "Parties") jointly move the Court to approve the Parties' Settlement Agreement and Release of FLSA Claims (the "Agreement," attached hereto as "**Exhibit A**") and dismiss this case with prejudice.  As grounds, the Parties state as follows:

**I.**      **Background and Procedural History.**

      1.      On May 28, 2024, Plaintiff filed his Complaint (Doc. 1) under the Fair Labor Standards Act ("FLSA") alleging that during Plaintiff's former employment with Goldring, he was not paid regular and overtime wages in violation of 29 U.S.C. § 201.

2.    On July 8, 2024, Goldring filed its Answer to the Complaint (Doc. 6), patently denying the factual allegations and the alleged FLSA violations asserted in the Complaint.  Goldring also asserted that Plaintiff was exempt from FLSA overtime requirements under Section 13(b)(1) of the FLSA (the Motor Carrier Exemption).  (Doc. 6 at p. 4).

3.    The Parties engaged in early settlement discussions and agreed to settle the lawsuit on August 5, 2024.  The Parties filed the Notice of Settlement on August 12, 2024 (Doc. 10), and the Court allowed the Parties until September 12, 2024 to file their Motion for Approval along with the Agreement outlining the Parties' settlement terms.  (Doc. 11).

## II.    **The Parties' Fair and Reasonable Compromise.**

4.    As discussed below, there are several bona fide disputes between the Parties that both Parties negotiated, by and through their counsel of choice, resulting in mutual compromises and concessions on contested issues.

### A.    **The Parties' Respective Positions and Settlement Negotiations**

5.    Specifically, the Complaint alleges that, during Plaintiff's former employment with Goldring, Goldring failed to pay him for:  (i) work performed on April 22, 2024; (ii) three (3) absences on days where Plaintiff alleges he properly requested and Goldring approved sick leave and/or vacation pay; and (iii) an

unspecified amount of overtime hours.  (Doc. 1 at ¶¶ 11, 14, 17, 20 – 23, 26 – 27).

6.      Goldring denies that Plaintiff worked any hours on April 22, 2024 because he was absent from work that day and also denies that Plaintiff was entitled to sick and/or vacation pay for the three (3) absences at issue.  Since Plaintiff violated Goldring's sick and vacation leave policies, Goldring did not approve his request for vacation or sick leave, and thus, Plaintiff's absences were unexcused and not compensable.  Goldring also denies that Plaintiff was entitled to overtime pay because he was properly classified as overtime-exempt under the FLSA. (Doc. 10 at ¶¶ 11, 14, 17, 20 – 23, 26 – 27, pp. 4 – 6).

7.      During settlement negotiations, Goldring maintained that its pay practices with respect to Plaintiff were implemented in a good faith belief that they complied with the FLSA.  Thus, Goldring's position was and is that absent a stipulated settlement, Goldring is likely to prevail on its good faith defense, eliminating Plaintiff's recovery of liquidated damages.  (Doc. 6 at p. 5).

8.      During settlement negotiations, the Parties agreed that Plaintiff was properly classified as exempt from FLSA overtime requirements and not entitled to overtime pay.  However, the Parties hotly disputed the remaining unpaid wages claim.  Indeed, there were bona fide disputes regarding whether Plaintiff actually worked on April 22, 2024, based on Goldring's documented proof that he was absent from work that day versus Plaintiff's documented proof that he worked that day, and

whether his other three (3) absences were compensable based on Goldring's sick leave and vacation policies.  Plaintiff maintained that he should be paid for four (4) days of work, and Goldring asserted that it did not owe Plaintiff any sum of money based on its defenses and investigation of Plaintiff's claim.

### B.     Compromise of Bona Fide Disputes

9.      In recognition of the risks and uncertainties, as well as the expense, both in time and costs, the Parties will face or incur if Plaintiff's claims continue to be prosecuted, through litigation, the Parties worked diligently, making reasonable concessions on the disputes outlined above, to try and reach mutually acceptable settlement terms.  Ultimately, the Parties' efforts were successful, and the Parties agreed to resolve Plaintiff's FLSA claims for a total monetary payment of **$1,978.84**, allocated as set forth, *infra*, in Section III.

### III.   Summary of the Settlement Agreement's Key Terms.

10.     Pursuant to the Agreement, Goldring will pay Plaintiff the total amount of $1,978.84, allocated as follows:

- $953.84 will be paid to Plaintiff, which includes backpay in the amount of $476.92, less required tax withholdings, and liquidated damages in the amount of $476.92  (Ex. A at ¶ 1 (a), (b)).
- $1,025 will be paid to Plaintiff's attorney as attorney's fees and costs incurred to file and prosecute Plaintiff's claims.  (Ex. A at ¶ 1 (c)).

4

Provided the Court approves the Agreement, and conditioned on Plaintiff providing necessary tax forms (e.g., an updated Form W-4 for tax withholdings and Form w-9 for the liquidated damages payment that will be reported as 1099 income), the above payments will be delivered within fourteen (14) days of the Court's Order approving the settlement.  (Ex. A at ¶ 1).

11.    In prosecuting this lawsuit, Plaintiff's counsel's rate is $395 per hour, and he expended over 5 hours meeting with Plaintiff, drafting the Complaint, negotiating the settlement, etc.  Nevertheless, he has agreed to accept $500 in fees for his time, which is a substantial reduction of what the lodestar figure would be.  Additionally, Plaintiff's counsel incurred costs for filing fees and service of process costs, totaling $525. Plaintiff's counsel agreed to substantially reduce his claimed fees and is seeking an award of $1,025.00 for attorney's fees and costs.

12.    The Parties agree Plaintiff's counsel's hourly rate is reasonable based on his experience and specialized knowledge and customary rates in the applicable local market.  Additionally, the Parties agree the number of hours Plaintiff's counsel spent working on this matter are reasonable based on the work necessary to investigate Plaintiff's claims, prepare and file the Complaint, and engage in arms-length negotiations in an attempt to resolve Plaintiff's claims.

13.    The proposed fees owed to Plaintiff's counsel were negotiated separately from and without regard to Plaintiff's unpaid overtime claim.   The Parties

further believe that a fee award of $1,025.00 is a reasonable and appropriate amount.

14.    In exchange for the FLSA Settlement Payment, Plaintiff agreed to a limited release, waiving only his federal and state wage & hour claims based on the allegations of unpaid wages, which provides:

> **Release of Claims.** For the period beginning on the date Murphy began his employment with Released Parties, up to and including the date the Court approves this Agreement, Murphy, which as used in this Section 4 includes Murphy's heirs or personal representatives, fully and finally releases the Released Parties, from any and all claims arising under federal or state wage & hour laws for unpaid wages or overtime owed for hours allegedly worked ("Unpaid Wages Claims"). Accordingly, Murphy forever waives any right to recover backpay, liquidated damages, attorney's fees and expenses, or other damages and/or equitable relief from the Released Parties based on the Unpaid Wages Claims and/or to assert against the Released Parties similar Unpaid Wages Claims based on any act, event, or omission from the day he began his employment with Released Parties until the date this Agreement is approved by the Court and becomes effective. Nothing in the foregoing release or this Agreement shall be construed as waiving any claims or rights (i) other than the Unpaid Wages Claims; (ii) that may not be waived by law; and/or (iii) as affecting the ability of the Parties to initiate proceedings to enforce this Agreement. (Ex. A at ¶ 4).

15.    The Agreement provides that it is not confidential and will be filed with the Court, will not become effective unless and until the Court approves the settlement, and includes a severability provision. (Ex. A at ¶¶ 6, 7 and 13).

16.    The FLSA settlement payment of $1,978.84 has been offered to Plaintiff solely in exchange for his release of the FLSA claims, which is set forth above and in full at paragraph 14.

17.     Throughout the settlement negotiations, the Parties have been independently represented by counsel, and with the benefit of counsel's advice, the Parties have voluntarily and knowingly agreed to settle this case as outlined in the accompanying Agreement.

18.     The Parties respectfully submit the Agreement is an adequate, fair, and reasonable resolution of bona fide disputes under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

19.     Should the Court approve the Agreement, the Parties have agreed to the dismissal of this action with prejudice and stipulate to a final order of dismissal.

## IV.     Controlling Law and Analysis

Employees can settle claims brought under the FLSA in two ways. First, employees can settle and waive FLSA claims if the Secretary of Labor supervises the employer's payment of unpaid wages to the employee. 29 U.S.C.A. § 216(c); *Lynn's Food Stores v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, and as applicable here, in the context of a private lawsuit brought by an employee against an employer, an employee may effectively release claims only if the court approves the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353 (noting that in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the court, which "may enter a stipulated judgment after

scrutinizing the settlement for fairness.").

In detailing the reasons for requiring court approval of an FLSA settlement,

the Eleventh Circuit has stated as follows:

> [S]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. *If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

*Id.* at 1354 (emphasis added). When adjudicating motions for approval of

settlements, courts operate under a "strong presumption" in favor of approval.

*Lynn's Food Stores*, 679 F.2d at 1353.

Here, the Agreement should be approved because it represents a reasonable

compromise of hotly contested issues, including whether Plaintiff actually performed

any work on April 22, 2024, whether Plaintiff's absences were compensable, the

amount of backpay, if any, Plaintiff is owed, and the recovery of liquidated damages.

The Agreement was reached in an adversarial context in which the Parties were

represented by competent and experienced counsel engaged in arms-length

negotiations. *See Baker v. G & S Elec. of Nw. Fla. LLC*, 2023 WL 10554725 at *2

(N.D. Fla. Aug. 14, 2023); *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).  Moreover, the Agreement does not require Plaintiff to incur additional obligations other than releasing his FLSA claims, which limited release is supported by adequate compensation that the Parties agree exceeds or potentially exceeds any recovery Plaintiff would have received outside the Parties' settlement.

With regard to attorney's fees, when the fee is negotiated separately and without regard to the amount paid to the plaintiff, as Plaintiff's attorney's fees were here, absent an apparent adverse impact on the plaintiff's recovery the Court's scrutiny is not required.  *Bonetti*, 715 F. Supp. 2d at 1228 (M.D. Fla. 2009) ("[T]he settlement does not appear [un]reasonable on its face [and] there is [no] reason to believe plaintiff's recovery was adversely affected by the amount of fees paid to his attorney.").  Plaintiff's claim for attorney's fees and expenses was based on a reasonable hourly rate and negotiated separately from Plaintiff's claims for backpay and liquidated damages.   In other words, the attorney's fee award does not in any way interfere with or reduce Plaintiff's recovery.

## **CONCLUSION**

Based on the foregoing, the Parties respectfully request that the Court accept and approve the Agreement as a fair and reasonable compromise of disputed issues

under the FLSA and enter an Order granting this joint motion and dismissing this action in its entirety, with prejudice, with each party to bear his or its own costs.

Respectfully submitted this 27th day of August 2024,

/s/ Bradley S. Odom
Bradley S. Odom
Florida Bar Number: 932868
ODOM LAW GROUP, P.A.
1800 North "E" Street
Pensacola, Florida 32501
(850) 434-3527
email@odomlawgroup.net

**Attorney for Plaintiff Johnathan Murphy**

/s/ Mary Anna Brand
Mary Anna Brand
Florida Bar No.: 1049486
MAYNARD NEXSEN PC
RSA Battle House Tower
11 North Water Street, Suite 24290
Mobile, AL 36602
Telephone: (251) 432-0001
mbrand@maynardnexsen.com

**Attorney for Defendant Goldring Gulf Distributing Co., LLC**

### CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, I filed a copy of the foregoing using the Court's CM/ECF system, which automatically send notice to all counsel of record.

_/s/ Mary Anna Brand_